Rita Jo **WHITMIRE, Appellant,**

v.

**MID–CONTINENT CASUALTY COMPANY, Appellee.**

No. 87535.

Court of Appeals of Oklahoma,
Division No. 1.

Sept. 17, 1996.

Certiorari Denied Nov. 15, 1996.

Harry Scoufos, Thomas W. Condit, Law Offices of Harry Scoufos, P.C., Sallisaw, for Appellant.

John A. Gladd, William F. Smith, Robert E. Jamison, Jr., Gail W. Harris, Gladd, Smith, Harris & Rounds, P.A., Tulsa, for Appellee.

### *OPINION*

BUETTNER, Judge:

This is an appeal from an order sustaining Defendant Mid–Continent Casualty Company's (Mid–Continent) second motion for summary judgment. The following facts are undisputed: At 3:45 a.m., August 8, 1990, Linda Harris, entered Plaintiff Rita Jo Whitmire's bedroom and threatened her with a gun. Harris was formerly married to Whitmire's husband. Harris, wearing a wig, first asked for money. She took $80.00 from Whitmire's purse and a gold chain from the dresser. Harris threw a roll of tape on the bed and made Whitmire tape her feet together, then Harris taped Whitmire's hands. Harris used

a pair of Whitmire's pantyhose as a gag for Whitmire.

Harris then took Whitmire out to Whitmire's Cadillac and placed her on the floorboard of the back seat. Harris drove Whitmire's Cadillac from her Vian home toward Tahlequah. Harris had an accomplice who followed in a Corvette. At a bridge crossing in Cherokee County, Harris stopped the Cadillac on the side of the road and had a discussion with her accomplice. Harris returned to the Cadillac, and standing outside the car, put it in gear, and caused it to roll down an embankment and hit a tree. Whitmire felt a jolt. Harris then moved Whitmire into the front seat of the Cadillac behind the steering wheel, and put the seat belt around her. Harris poured gasoline on the car and on Whitmire, struck a match, and set both on fire.

Whitmire managed to free her feet, jumped out of the car and ran. Harris caught Whitmire and attempted to pull her back to the car, but left the scene when she saw two men coming to help Whitmire. Harris left the scene in the Corvette driven by her accomplice. The rescuers called an ambulance and assisted Whitmire, who suffered burns over 90% of her body.

Whitmire sued Harris and recovered a judgment of $87,500,000. She also made demand on Mid–Continent because it provided uninsured motorist coverage on Whitmire's Cadillac. Mid–Continent denied the claim. Whitmire sued alleging extreme mental anguish and emotional distress as a result of being kidnapped and transported in her car, and bad faith on behalf of Mid–Continent in its refusal to pay under the uninsured motorist coverage.

The trial court sustained Mid–Continent's second motion for summary judgment.[1] Whitmire appeals pursuant to Rule 1.203 of the Rules of Appellate Procedure in Civil Cases.

---

1. The trial court overruled Mid–Continent's original motion for summary judgment. In her Supplemental Brief in Response to Defendant's Second Motion for Summary Judgment and Defendant's Letter Brief Dated June 13, 1995, Whitmire argued that the trial court's order denying Defendant' original motion for summary judgment was the law of the case. However, she did not raise this issue in her petition in error, and thus, abandoned it. *Barber v. Flynn*, 628 P.2d 1151 (Okla.1980).

Pursuant to 36 O.S.1991 § 3636 liability insurers in Oklahoma must offer uninsured motorist coverage to their insureds. Section 3636 provides:

(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued ... unless the policy includes the coverage described in subsection (B) of this section.

(B) The [liability] policy ... shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The issue is whether Whitmire is legally entitled to recover damages from Harris as operator of an uninsured motor vehicle.

Both parties cite *Safeco Insurance Company v. Sanders,* 803 P.2d 688 (Okla.1990), as authority for their arguments. In that decision, the Oklahoma Supreme Court answered four questions of law certified by the United State District Court for the Northern District of Oklahoma. The questions and the answers were:

1. Does the murder of [a man and a woman] when they were murdered by being burned to death in the trunk of the automobile in question "arise out of the ... use of a motor vehicle" as contemplated by 36 O.S.1981 Sec. 3636? **Yes.**

2. If the deaths arose out of the use of a motor vehicle, was there a causal connection between the use of the vehicle and the murders? **Yes.**

3. If the causal connection existed, do the acts of [the wrongdoers] after the car was parked, constitute acts of independent significance to sever any causal link? **Yes.**

4. Were [the wrongdoers] "operators of (an) uninsured motor vehicle" when they set the vehicle on fire and murdered [the man and the woman]? **Yes.**

803 P.2d at 690.

In *Sanders,* a man and woman were seated in her car in a parking lot when approached by two miscreants who got in the car and forced the woman to drive. When the miscreants ordered the woman to stop the car, they took the man's money and keys to his truck. They tied him up and put him and the woman in the trunk of her car. Then the villains drove the car back to the parking lot, where one of them took the man's truck and followed the other driving the woman's car to an isolated location. With the man and woman still locked in the trunk of her car, the criminals cut the fuel line of the car, ignited it, and the car burned. The man and woman died as a result of thermal burns and smoke inhalation while in the trunk of the car.

In answering Question # 1 in the affirmative, the Supreme Court held that "injury resulting from a chain of events which starts with the use of a motor vehicle as the dangerous instrumentality arises out of the use of the motor vehicle." The Court found, as a matter of law, the murder of the man and woman arose out of the use of a motor vehicle pursuant to § 3636.

With respect to Question # 2, the Court held that "use of an uninsured motor vehicle, which is related to its transportation nature and which results in injury, is causally connected to the injury." Whether a use of an uninsured motor vehicle is related to the transportation nature of the vehicle is necessarily a question of fact to be determined in each case. Based on the facts presented there, the Court found the requisite causal connection.

However, in answering Question # 3, the Supreme Court held that if the "evidence establishes that acts of an uninsured motorist, which were not related to the transportation nature of the motor vehicle, resulted in the injury to the insured and the transportation use of the vehicle did not contribute to the injury, then any causal connection between the transportation use of a motor vehicle and the injury is interrupted and severed." 803 P.2d at 695. The Court found the acts of cutting the fuel line and igniting

the fuel after the car was parked, which caused the car to burn, were so contrary to the transportation use of the auto that, as a matter of law, those acts severed any causal connection to the injury, and the injury resulting therefrom was not within the UM coverage mandated by § 3636.

In response to the fourth certified question the Court cited *Heritage Insurance Company of America v. Phelan,* 59 Ill.2d 389, 321 N.E.2d 257 (1974). In that case the Illinois Court held that a driver of an automobile continued to be an operator of the vehicle while stopped at a service station. The Court held that an "operator of an uninsured motor vehicle includes any person who is engaged in activity related to the *transportation* nature of the vehicle." 803 P.2d at 695. Sanders' automobile was uninsured when it was *operated* by either of the wrongdoers. It then answered the fourth question in the negative finding the wrongdoers were not operators of an uninsured motor vehicle when they set the vehicle on fire.

■■■ Applying the *Sanders* rationale to the instant facts, we note the following:

1. The chain of events relating to Whitmire's injuries did not start with the motor vehicle, as required by *Sanders.* Rather, the chain of events started in Whitmire's home where she was robbed, then abducted at gunpoint.

2. The vehicle was the situs of Whitmire's injuries, not the instrumentality, as discussed in *Sanders.* While Whitmire argues that the car was an essential part of the abductor's plan, the alleged plan was not successful to the extent that the wreck did not cause the car to burn. If it had, this case would be closer to *Sanders.* Here, Whitmire's injuries were caused by the abductor's use of gasoline poured on the car and the abductor's act in igniting the gasoline. *See Sanders,* 803 P.2d at 696 n. 10.

3. As in *Sanders,* the acts of the abductor, in kidnapping Whitmire from her home, and setting fire to Whitmire and her car, were so contrary to the transportation nature of the motor vehicle so as to sever any causal connection.

4. The abductor was not an "operator" of the vehicle when she poured gasoline over Whitmire and the car and ignited the gasoline. Harris was not engaged in activity related to the transportation nature of the vehicle; rather she was attempting to incinerate Whitmire.

The facts of this case are similar to those in *Sanders.* The *Sanders* Court found that the criminals were not "operators" of the car when they cut the fuel line and set the car ablaze. In the instant case, the kidnapper was even less of an operator when she poured gasoline from a can, brought for that purpose, over Whitmire and the car. Such activity was not related to the transportation use of the automobile, "and injury resulting therefrom is not within the UM coverage mandated by § 3636." *Sanders,* 803 P.2d at 695. The trial court's decision granting summary judgment to Mid–Continent on Whitmire's uninsured motorist claim was appropriate.

Summary judgment was also appropriate on Whitmire's bad faith claim. As the trial court decision and this opinion bear out, the undisputed facts show that Mid–Continent had a reasonable ground for contesting coverage. *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1977).

AFFIRMED.

HANSEN, P.J., dissents with separate opinion.

JOPLIN, J., concurs.

HANSEN, Presiding Judge, dissenting:

I disagree with the majority. In applying the *Sanders* four-step test to the instant facts, the majority found, as a matter of law, that Plaintiff's injury did not arise out of Harris' use of her car as contemplated by § 3636. However, in *Sanders,* the Supreme Court held the phrase "arising out of the ownership, maintenance or use of a motor vehicle," in ordinary and comprehensive words, encompasses a broad spectrum of factual sequences which might result in injury covered by the liability insurance policy. Here, the facts establish Plaintiff could not have been abducted had it not been for the use of Plaintiff's auto. Plaintiff's auto, in

which Harris kidnaped Plaintiff as Harris drove her out of town, was the dangerous instrument which started the chain of events leading to her injury. *See Oklahoma Farm Bureau Mutual Insurance Co. v. Mouse*, 268 P.2d 886 (Okla.1954).

Moreover, I disagree with the majority's finding, as a matter of law, that the auto was the mere situs of Plaintiff's injuries. There was certainly a causal connection between Harris' use of the auto and Plaintiff's injury. More specifically, Harris' transportation use of the auto was causally connected to Plaintiff's injury. Evidentiary material reveals Harris' use of the auto in driving it, with Plaintiff confined to its rear floorboard, putting it in gear and pushing it down the embankment, and her use of the auto in seatbelting Plaintiff in the front seat to confine her while Harris poured gasoline on her and the auto is connected to Plaintiff's emotional distress and her physical burns. An uninsured motorist's use is limited *neither* to the car's driving *operation nor* to the *lawfulness* of the use. *Willard v. Kelley*, 803 P.2d 1124 (Okla.1990). Clearly, Harris' transportation use of the auto could be found to be causally connected to Plaintiff's injury.

Evidentiary materials indicate a plan to injure or kill Plaintiff in a manner that appeared to be an auto accident with consequential injury or death by fire. Harris' acts are distinguished from the acts of the wrongdoers in *Safeco*, because those wrongdoers used that *parked* auto as a deadly "incinerator." However, herein, the transportation use of the auto was the heart of Harris' plan to roll the auto down the embankment where it would crash and burn. If the trier of fact finds these acts are related to the transportation use of the auto, they are not acts of independent significance so as to sever the causal connection between Harris' use of the auto and Plaintiff's injury.

Finally, I disagree with the majority's finding, as a matter of law, that Harris was not an operator of the auto during the commission of the wrongful acts. In *Sanders*, the Supreme Court held an "operator" to "include[s] any person who is engaged in activity related to the transportation nature of the vehicle." Also, the Court recognized the def-

inition of "operator" in Webster's Third New International Dictionary of the English Language Unabridged, 1963, at page 1581 which defines "operator" as "one that produces a physical effect or engages himself in the mechanical aspect of any process or activity." Herein, when Harris drove the auto during the time in which Plaintiff was confined to the auto's floorboard, she engaged herself in the mechanical aspect of driving. When Harris rolled the auto down the embankment, and when she ignited the auto and Plaintiff, she was producing a physical affect on the auto. Therefore, reasonable minds could certainly conclude Harris was the operator of the auto during the commission of the wrongful acts.

In *Byus v. Mid–Century Ins. Co.*, 912 P.2d 845 (Okl.1996), the Supreme Court reversed summary judgment in favor of an insurance company on a claim on an uninsured motorist provision. It held that genuine issues of material fact precluded summary judgment in favor of either party, finding conflicting inferences could be made as to whether a drive-by shooting arose from the use of the auto, whether the shooting was an independent, supervening cause, and whether the insured's death was caused by the "operator" of the auto. The Court found "[t]he issues in this case are all so intertwined the determination of one impacts the others. None of the issues are determinable as a matter of law."

In *Sanders* the Court held, as a matter of law, that the first two elements necessary for a determination of liability for uninsured motorist coverage existed. However, whether Harris' acts were of such independent significance so as to sever the causal link is a question of fact where reasonable minds could differ. The final question of whether Harris was an "operator" of an uninsured auto also should be left to the trier of fact.

The Court in *Sanders* made it clear liability of an insurer for such injuries turns on the particular and unique facts in each case. The *Sanders* Court found the wrongdoers were not "operators" when they set fire to the car. However, here, evidentiary material indicates Harris could be found by a trier of fact to have been engaged in activity relat-

ing to the transportation use of the auto when she caused Plaintiff's injuries.

If under the evidence, reasonable people could reach different conclusions from the facts, summary judgment should not be granted. *Temeron, Inc., v. Ferraro Energy Corp.,* 861 P.2d 319 (Okla.App.1993). "The issues in this case are all so intertwined the determination of one impacts the other." The trial court erred in granting summary judgment in favor of Defendant. I would reverse and remand for trial.