**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**Eugene NARVAEZ, Defendant.**

No. CIV–96–1845–L.

United States District Court, W.D. Oklahoma.

July 1, 1997.

Tim D. Cain, Oklahoma City, OK, for plaintiff.

Robert Behlen, Oklahoma City, OK, for defendant.

### ORDER

LEONARD, District Judge.

Plaintiff State Farm Mutual Automobile Insurance Company brings this diversity action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Defendant Eugene Narvaez has made a demand upon plaintiff for the policy limits of a certain uninsured/underinsured motorist insurance policy. Plaintiff claims there is no coverage under the policy. This matter is before the court on the (1) Motion for Summary Judgment filed by defendant on April 14, 1997, and (2) Defendant's Application for Leave to File Amended Counterclaim, filed May 23, 1997.

### SUMMARY JUDGMENT

Initially, the court notes that on May 6, 1997, defendant filed a response to plaintiff's motion combined with a "Counter–Motion for Summary Judgment." However, since the dispositive deadline was April 14, 1997, the court finds that to the extent the response purports to be a dispositive motion in and of itself, it is untimely. Since the parties agree that the facts surrounding the coverage issue are undisputed, the untimeliness of the counter motion has no practical effect and the court will consider defendant's response in its entirety in determining the issue of coverage. The court has also considered supplemental material submitted by defendant. Based upon its review of the facts and the arguments of the parties, the court finds that

plaintiff is entitled to judgment in its favor as a matter of law.

The uncontroverted/stipulated facts as they pertain to the coverage issue are as follows (citations to the record are omitted):

1. Plaintiff, State Farm, is an Illinois corporation with its principal place of business in the State of Illinois.

2. The defendant is a citizen of the State of Oklahoma and resides in the Western District of Oklahoma.

3. Jurisdiction is based on diversity of citizenship and the amount in controversy exceeds the applicable jurisdictional amount, exclusive of interest and costs.

4. On July 2, 1996, defendant was assaulted and battered in or near the parking lot of the La Quinta Inn located near Interstate 40 and Meridian, in Oklahoma City, Oklahoma.

5. At the conclusion of defendant's beating, the assailant robbed defendant and stole defendant's vehicle.

6. As a result of this beating, defendant alleges that he has suffered severe injuries.

7. On July 2, 1996, defendant was an insured under two State Farm insurance policies, form number 9836.2, both of which provided uninsured/underinsured motorist coverage of $25,000.00 per person/$50,000.00 per accident.

8. Defendant has made a demand on State Farm for the "policy limits" of the uninsured/underinsured motorist coverage in the above-referenced policies.

9. Defendant has no memory of his beating or the actions which immediately followed. Defendant's memory after using the pay phone at the La Quinta Inn Motel is waking up at Mercy Hospital.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the initial

burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The automobile insurance policies issued by plaintiff in accordance with 36 O.S. § 3636 provide in pertinent part:

**Section III—Uninsured Motor vehicle—Coverage U:**

**You** have this coverage if "U" appears in the "coverages" space on the declarations page.

We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle.**

\* \* \*

Plaintiff argues that defendant's injuries did not arise out of the use, maintenance or operation of a motor vehicle; consequently defendant is not entitled to recover uninsured motorists benefits in this case under Oklahoma law. The Oklahoma Supreme Court has developed a four part test to determine whether uninsured motorist coverage applies to a particular injury:

1. Does the injury arise out of the use of the motor vehicle as contemplated by 36 O.S. § 3636?

2. If the injury arose out of the use of the motor vehicle, was there a causal con-

nection between the use of the vehicle and the injury?

 a. Is the use of the vehicle connected to the injury, and

 b. Is that use related to the transportation nature of the vehicle?

3. If the casual connection existed, did an intervening force sever the causal connection?

4. Was the uninsured an owner or operator of the vehicle during the commission of the wrongful act?

*Walker v. Farmers Ins. Co., Inc.,* 83 F.3d 349, 351 (10th Cir.1996); *Safeco Ins. Co. of Am. v. Sanders,* 803 P.2d 688 (Okla.1990) ("*Sanders* "); *Byus v, Mid–Century Ins. Co.,* 912 P.2d 845, 846–48 (Okla.1996).

### *Did defendant's injuries "arise out of the use of a motor vehicle"?*

 Regarding the first factor, whether the injury arises out of the use of a motor vehicle, if the facts establish that a motor vehicle or any part of the motor vehicle is the dangerous instrument which starts the chain of events leading to the injury, the injury "arises out of the use of the motor vehicle" as contemplated by the Oklahoma statute. *Sanders,* 803 P.2d at 692. Plaintiff asserts that neither the motor vehicle nor any part of it was the dangerous instrument which started the chain of events, since defendant was already injured by the time the assailant used the motor vehicle. Plaintiff argues that, "Rather than starting the chain of events leading to Mr. Narvaez's injury, the Narvaez motor vehicle was at the end of the chain of events involving Mr. Narvaez."

Although his arguments do not easily break down into an analysis of the distinct factors listed above, defendant asserts that the focus should be on "intent" to use the motor vehicle. Defendant claims that the assailant clearly had an intent to drive defendant's van at the time he injured defendant. According to defendant, "Provided that Mr. Narvaez' assailant *intended* to use defendant's van, he was *doing so* for UM purposes even as he was beating Mr. Narvaez senseless." Defendant cites *Sanders,* 803 P.2d at 696, for the proposition that whether one is

an operator is determined by acts indicating intent to operate the motor vehicle.

The court notes that this citation from *Sanders* is contained within the court's opinion dealing with the fourth factor (whether the uninsured was an owner or operator of the vehicle during the commission of the wrongful act) rather than in connection with the first factor. Also, the examples given by the Oklahoma court in connection with its discussion ("temporary interruption in the actual driving of the automobile for the repairs necessary to the continuation of the driving" and "facts clearly established every intention of the insured to immediately resume his journey and was in the process of doing so. at the time of the injury") are not, as defendant suggests, analogous to the factual situation presented in the present case.

At this stage of the proceedings, and construing all inferences to be drawn from the facts in favor of defendant, the court finds that it is possible that a jury could find that the facts establish that the motor vehicle was the dangerous instrument which starts the chain of events leading to the injury, since it is possible that the desire to steal the vehicle caused the assailant to injure defendant in the first place. However, because the court agrees with plaintiff that the second prong of the test cannot be met, determination of this factor does not assist defendant in overcoming summary judgment.

### *If the injury arose out of the use of the motor vehicle, was there a causal connection between the use of the vehicle and the injury?*

 As previously stated, resolving this factor involves answering two questions: (a) whether the use of the vehicle is connected to the injury, and (b) whether the use is related to the transportation nature of the vehicle. *Walker,* 83 F.3d at 352; *Sanders,* 803 P.2d at 692. The requirement in Oklahoma's uninsured motorist statute that the insured be legally entitled to recover damages from the owner or operator of an uninsured motor vehicle implies an intent that there be a connection between the motoring or transportation use (use related to the inherent nature of a motor vehicle) by an uninsured motorist and the injury to the insured.

*Sanders,* 803 P.2d at 692. The Oklahoma Supreme Court has recently reiterated that the law as stated in *Sanders* requires that the uninsured vehicle be in use as a motor vehicle at the time of injury. *Mayer v. State Farm Mutual Automobile Insurance Company,* 944 P.2d 288 (1997).[1] Here, the facts do not establish a connection between the transportation use (use as a motor vehicle) of defendant's vehicle and the injuries to defendant. The undisputed facts do not establish that the use of the uninsured motor vehicle was related to its transportation nature and defendant's injury was connected to that use.

*If a causal connection existed, did an intervening force sever the causal connection?*

Having found no causal connection exists between the use of the vehicle and defendant's injury, the court has no need to address this third factor.

*Was the uninsured an owner or operator of the vehicle during the commission of the wrongful act?*

■ In light of the court's rulings on the other factors, consideration of this factor is also not required, however, the court finds that the undisputed facts fail to establish that the assailant either produced a physical effect or engaged himself in the mechanical aspect of any process or activity or otherwise engaged in any activity related to the transportation nature of the vehicle so as to bring himself within the meaning of the term "operator" under Oklahoma law. *See Sanders,* 803 P.2d at 696.

Upon consideration of the four factors to determine whether uninsured motorist coverage applies in this case, the court determines as a matter of law that defendant is not entitled to coverage. There is no ·causal connection between defendant's injuries and the transportation nature of the vehicle. Accordingly, plaintiff is entitled to summary judgment on the coverage issue and Plaintiff's Motion for Summary Judgment should be and is hereby **GRANTED.**

---

1. In the exercise of its discretion pursuant to LR 7.1(g), and because it agrees with plaintiff that *Mayer* "reaffirms and clarifies what is already

### AMENDED COUNTERCLAIM

■ Defendant seeks leave of court to add a claim stemming from plaintiffs alleged bad faith in denying uninsured motorist benefits to defendant. Defendant asserts that his request should be granted pursuant to Fed. R.Civ.P. 15 which provides that leave to file amended pleadings should be freely given when justice so requires. In support of his application, defendant states that after his original counterclaim was filed in this case, "counsel for Mr. Narvaez learned that State Farm had recently reviewed a claim which is analytically and legally indistinguishable from the immediate case, and reached the inescapable conclusion that the UM provisions of the subject policy afforded coverage for it." Correspondence concerning this allegedly similar claim is attached to defendant's application and is dated February 18, 1997 and April 4, 1997. The April 4, 1997 letter is from State Farm to counsel for defendant, who is apparently also the attorney in the other, allegedly similar, case. No reason is given in the application for defendant's decision to wait until May 23, 1997 to seek leave of court to add a bad faith claim in this case.

■ Oklahoma law provides that an insurer has an implied duty to deal fairly and act in good faith with its insured and the violation of this duty gives rise to an action in tort. *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okla.1977). A party alleging bad faith by an insurer must plead all of its elements and has the burden of proof *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 587 (Okla.1981). It is well settled that an insurer does not breach its duty of good faith and fair dealing by refusing to pay a claim or by litigating a dispute with its insured if there is a legitimate dispute as to coverage or amount of the claim, and the insurer's position is reasonable and legitimate. *Thompson v. Shelter Mutual Ins.,* 875 F.2d 1460, 1462 (10th Cir.1989). No reasonable inference of bad faith arises from the insurer's withholding payment based on a

---

existing law in Oklahoma", Defendant's Application for Leave to File Reply Brief is denied

legitimate dispute. *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1440 (10th Cir. 1993). It is not bad faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim. *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1360 (Okla. 1989). The fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is legitimate. *Oulds,* 6 F.3d at 1442. The denial of a claim based upon a legitimate dispute does not imply bad faith and judgment as a matter of law is to be granted to the insurer when the plaintiff fails to produce specific evidence of bad faith. *Id.*

Plaintiff objects to defendant's attempt to add a bad faith claim, stating:

> The [other] claim described by Mr. Narvaez does not appear to be a UM claim, and in any event the Claim Representative's mistaken original letter, later corrected, certainly provides no basis for Mr. Narvaez's assertions of bad faith on the part of State Farm. The record in the Narvaez case is devoid of any hint of bad faith on the part of State Farm. State Farm believes it will prevail in the instant action, but even if State Farm should not prevail it has the right to litigate this issue without the burden of defending against the claims sought to be asserted at this late hour by Mr. Narvaez.

The court generally agrees with plaintiff that defendant's request to add a bad faith claim comes quite late and could result in considerable prejudice to plaintiff since the coverage issue has been fully briefed on stipulated facts. Also, although it is not possible for the court to determine conclusively whether the other claim is significantly similar to the present claim, the court is not convinced that evidence of how plaintiff treated another claim would establish that the insurer's refusal to pay the present claim was unreasonable and unjustified. More importantly, even if the court were to allow a bad faith claim at this late date, the law is well established that a party cannot prevail on a bad faith claim if there is a legitimate

dispute between the insured and insurer as to issues of fact or law. In light of this court's determination that plaintiff properly disputed defendant's claim for uninsured motorist benefits, any bad faith claim would be unsuccessful. Therefore, defendant's Application for Leave to File Amended Counterclaim should be and is hereby **DENIED.**

In conclusion, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Application for Leave to File Amended Counterclaim is **DENIED,** all as more fully set forth above. Judgment will issue on a separate document in accordance with the Federal Rules of Civil Procedure.