STATE OF NORTH CAROLINA v. DARRELL SAMUEL DELLINGER

No. 8427SC873

(Filed 2 April 1985)

1. **Automobiles and Other Vehicles §§ 121, 123— driving while impaired—horse as vehicle—rider as operator**

    A horse is a "vehicle" for the purpose of a prosecution under the driving while impaired statute, G.S. 20-138.1, and a horseback rider is an "operator" who is in "control of a vehicle which is in motion" within the purview of G.S. 20-4.01(25) when the horse is ridden upon a street, highway or public vehicular area. Furthermore, in enacting G.S. 20-171, the legislature intended that the provisions of the traffic laws applicable to drivers of "vehicles" should apply to horseback riders irrespective of whether a horse is a vehicle.

2. **Automobiles and Other Vehicles § 127.1— riding horse while impaired—sufficient evidence of driving while impaired**

    Evidence tending to show that defendant was riding a horse on a street while defendant had an alcohol concentration of .18 was sufficient for the jury

to find that defendant drove a vehicle upon a street while under the influence of an impairing substance.

**3. Automobiles and Other Vehicles § 126.3; Constitutional Law § 43— breathalyzer test—no right to counsel**

The administration of a chemical analysis to determine if a driver was acting under the influence of an impairing substance is not a critical stage of the prosecution for driving while impaired entitling defendant to counsel.

**4. Automobiles and Other Vehicles § 126.2— driving while impaired—requirement of two breathalyzer tests after 1 January 1985—equal protection**

A defendant charged with driving while impaired prior to 1 January 1985 was not denied equal protection of the laws because G.S. 20-139.1(b3) requires that defendants charged with impaired driving after 1 January 1985 be given two breathalyzer tests since the statute merely treats the same group of people in different ways at different times.

**5. Automobiles and Other Vehicles § 126.3— breathalyzer test—improper maintenance of machine—burden of proof on defendant—constitutionality**

The statute putting the burden on defendant to object and show that a breathalyzer machine has not been maintained in accordance with regulations of the Commission for Health Services, G.S. 20-139.1(b2), does not unconstitutionally shift the burden of proof to defendant since the absence of proper maintenance is an affirmative defense, and the State may permissibly put the burden of establishing affirmative defenses on the defendant.

**6. Automobiles and Other Vehicles § 126.3— breathalyzer operator granted permit before Safe Roads Act**

A breathalyzer operator who was granted his permit by the Division of Health Services before the enactment of the Safe Roads Act, including G.S. 20-139.1, was nevertheless "a person granted a permit by the Department of Human Resources under G.S. 20-139.1" within the purview of G.S. 20-4.01(3b) and was thus qualified to testify as to the results of defendant's breathalyzer tests.

APPEAL by defendant from *Griffin, Judge.* Judgment entered 6 April 1984 in Superior Court, LINCOLN County. Heard in the Court of Appeals 13 March 1985.

Defendant was arrested on 3 December 1983 and charged with driving while impaired. The arrest stemmed from defendant's riding a horse in the Lincolnton Christmas parade. The horse would spin and lift its feet off the ground, apparently when kicked by defendant. Defendant was taken to the Lincoln County jail and given a breathalyzer test which indicated that he had an alcohol concentration of 0.18. Defendant was convicted at a jury trial and appeals.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Harris, Bumgardner and Carpenter, by R. Dennis Lorance and James R. Carpenter, for defendant-appellant.*

EAGLES, Judge.

I

[1]   This appeal presents an issue of first impression: whether a horse is a vehicle for the purpose of charging a violation of G.S. 20-138.1? We hold that it is.

G.S. 20-138.1 provides in pertinent part:

A person commits the offense of impaired driving *if he drives any vehicle* upon any highway, any street, or any public vehicular area within this state . . . [w]hile under the influence of any impairing substance; or . . . [a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more. [Emphasis added.]

Defendant argues that a horse cannot be a "vehicle" and that even if it is, defendant was not "driving" it within the meaning of G.S. 20-138.1. We disagree.

"Vehicle" is defined in G.S. 20-4.01(49) as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power." "Driver" is defined in G.S. 20-4.01(7) as the "operator of a vehicle" and "operator" is defined in G.S. 20-4.01(25) as a "person who is in actual control of a vehicle which is in motion or which has the engine running."

We recognize that a distinction may have been made between driving and operating in prior case law and statutes regulating vehicles. However, *no such distinction is supportable* under G.S. 20-138.1 since a "driver" is defined as an "operator." It is clear that the legislature intended the two words to be synonymous. *State v. Coker,* 312 N.C. 432, 323 S.E. 2d 343 (1984).

Defendant's main argument is that a horse is not a "device" and therefore cannot be a "vehicle." While we have found no

North Carolina decisions defining a saddle horse as a vehicle for the purpose of a prosecution under the driving while impaired statute, we find decisions from other jurisdictions persuasive on this point. In *Conrad v. Dillinger*, 176 Kan. 296, 270 P. 2d 216 (1954), the Kansas Supreme Court held that a saddle horse is a "vehicle" within their statutory definition which is identical to G.S. 20-4.01(49). The Kansas court noted that its legislature expressly made the definition of the word "vehicle" so broad that it included not only automobiles and animal-drawn vehicles, but every device upon or by which any person may be transported, and that this definition is sufficiently broad to cover ridden animals. 270 P. 2d at 218. In addition to defining a horse as a vehicle for the purposes of the traffic laws of the State of Kansas, the court noted that by adoption of G.S. 1949, 8-506, the legislature made all the provisions of Kansas traffic laws applicable to persons riding animals upon a roadway irrespective of whether such animals come under the definition of a vehicle. 270 P. 2d at 218. *See also, Broussard v. Annaloro*, 268 So. 2d 293 (La. App. 1972); *Watson v. Stallings*, 270 N.C. 187, 154 S.E. 2d 308 (1967).

North Carolina has a similar statute, G.S. 20-171, that states:

Every person *riding an animal* or driving any animal drawing a vehicle upon a highway shall be subject to the provisions of this Article applicable to the driver of a vehicle, except those provisions which by their nature can have no application. [Emphasis added.]

We are convinced that the North Carolina legislature intended the provisions of the traffic laws of North Carolina applicable to the drivers of "vehicles" to apply to horseback riders irrespective of whether a horse is a vehicle.

We are further convinced that by our legislature's broad definition of vehicles in G.S. 20-4.01(49), it was intended that horses are vehicles within the meaning of G.S. 20-138.1 when operated upon a street, highway or public vehicular area by one who is impaired.

[2]     We further hold that a horseback rider is an "operator" who is in "control of a vehicle which is in motion" where the horse is ridden upon a street, highway or public vehicular area. Accordingly, where the evidence shows that defendant was riding a horse on a street while defendant had an alcohol concentration of 0.18,

the evidence is sufficient from which a jury could find that defendant drove a vehicle upon a street while under the influence of an impairing substance. G.S. 20-138.1.

## II

Defendant next assigns as error the trial court's refusal to dismiss the charge of driving while impaired based on constitutional grounds. We find no error.

Defendant filed a motion to dismiss pursuant to G.S. 15A-952 alleging that G.S. 20-138.1 violates defendant's rights under the Sixth Amendment of the United States Constitution by failing to provide for the right to counsel at a critical stage of the prosecution, and violates the Equal Protection Clause of the Constitutions of the United States and North Carolina and the ruling and reasoning of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975), by shifting the burden of proof to defendant. We disagree.

[3]  The administration of a chemical analysis to determine if a driver was acting under the influence of an impairing substance is not a critical stage of the prosecution for driving while impaired entitling defendant to counsel. *State v. Howren*, 312 N.C. 454, 323 S.E. 2d 335 (1984). For this reason, it was not error for the trial court to refuse to dismiss the driving while impaired charge based on a violation of defendant's Sixth Amendment right to counsel at a critical stage of the prosecution.

[4]  Defendant's assignment of error on the grounds of a violation of the Equal Protection Clauses of the United States and North Carolina Constitutions is based on the requirement of G.S. 20-139.1(b3) that defendants charged with impaired driving be given two breathalyzer tests after 1 January 1985. However, this new requirement for two tests does not create an impermissible classification denying defendant equal protection of the laws. *State v. Howren, supra.* G.S. 20-139.1(b3) merely treats the same group of persons, those arrested for driving while impaired, in different ways at different times. *Id.* It was not error for the trial court to refuse to dismiss the driving while impaired charge based on a violation of equal protection of the law.

[5]  G.S. 20-139.1(b2) provides that the results of a breath analysis are inadmissible if defendant objects to their introduc-

tion into evidence and demonstrates that the instrument used to conduct the analysis had not been maintained according to the regulations of the Commission for Health Services. Defendant, citing *Mullaney v. Wilbur, supra*, contends that this is an unconstitutional shifting of the burden of proof to defendant. We disagree. The possibility that the breathalyzer may not have been properly maintained is an affirmative defense to be established by defendant and the State may permissibly put the burden of establishing affirmative defenses on the defendant. *State v. Howren, supra.* Accordingly, the trial court did not err in refusing to dismiss the driving while impaired charge based on an unconstitutional shift in the burden of proof to defendant.

## III

**[6]** Defendant next assigns as error the trial court's refusal to exclude the testimony of the breathalyzer operator. We find no prejudicial error.

G.S. 20-4.01(3b) defines a chemical analyst as "a person granted a permit by the Department of Human Resources under G.S. 20-139.1 to perform chemical analyses." The breathalyzer operator was granted his permit on 26 October 1982, before the effective date of the Safe Roads Act, by the Division of Health Services, North Carolina Department of Human Resources. Since G.S. 20-139.1 was not in existence when the breathalyzer operator was granted his permit, defendant argues that he was not a person granted a permit by the Department of Human Resources under G.S. 20-139.1. We disagree and note that G.S. 20-4.01, "Definitions.," states that "Unless the context otherwise requires the following words and phrases, for the purpose of this Chapter, shall have the following meanings: . . . ." We hold that in the present case the context requires that "chemical analyst" for purposes of G.S. 20-139.1 include a person who was validly licensed by the Department of Human Resources to perform chemical analyses immediately prior to the enactment of the Safe Roads Act. To hold otherwise would mean that an individual licensed to perform chemical analyses under one statute would automatically lose his license when the testing procedures are merely recodified in another statute. Obviously the legislature did not intend that result. We note the absence of any specific voiding language as to the capacity of chemical analysts to administer tests where those

chemical analysts were licensed prior to the enactment of the Safe Roads Act. Of similar import, the Safe Roads Act imposed no new training or education criteria on breathalyzer operators, but left the licensing power with the Commissioner of Health Services of the Department of Human Resources as it was under the prior law. For these reasons it was not error for the trial court to allow the breathalyzer operator to testify as to the results of the defendant's breathalyzer test.

For the reasons herein stated, we find no error in the trial of this action. Defendant's remaining assignments of error are without merit.

No error.

Judges WHICHARD and JOHNSON concur.