Loretta J. BYUS, Administratrix of
the Estate of Thomas Edward
Byus, Deceased, Appellee,

v.

MID–CENTURY INSURANCE
COMPANY, Appellant,

and

Darrell Cooper and Manuel Jesus
Corrales, Defendants.

No. 81340.

Supreme Court of Oklahoma.

Feb. 27, 1996.

Randy D. Witzke, Steven E. Bracklein, Oklahoma City, for Appellant.

Patrick E. Carr, Sidney A. Martin, II, Tulsa, for Appellee.

HODGES, Justice.

This case is before this Court after the trial court rendered summary judgment in favor of the plaintiff and the Court of Appeals reversed and held judgment should have been rendered in favor of the defendant.[1] Because we find factual issues are

---

1. Rule 13 of the Rules for District Courts, Okla. Stat. tit. 12, ch. 2, app. 1, rule 13 (1991), requires that a copy of the evidentiary material relied on be attached to a motion for summary judgment.

The plaintiff failed to attach the evidentiary materials. The plaintiff has attempted to rectify this omission by including a partial transcript of October 25, 1993, and a deposition taken on Febru-

unresolved, we hold summary judgment for either party is improper.

## I. Facts

On August 4, 1991, the deceased, Thomas Edward Byus (Byus), was driving his own car home on South Shields in Oklahoma City. Michael McCracken (McCracken) and Lance Tennant were passengers in the car. As Byus was driving north and approaching 29th Street, a car driven by Darrell Lee Cooper (Cooper) turned onto Shields and headed south. Jacob De La Cruz (De La Cruz) and Manny Corrales (Corrales), along with two females, were passengers in the Cooper car.

As the two cars met, Corrales flashed a gang sign at the Byus car. One of the passengers in the Byus car responded with an obscene gesture. At the direction of Corrales, Cooper made a U-turn in order to follow the Byus car. When Byus realized the Cooper vehicle was following him, he turned onto 29th Street. Cooper also turned onto 29th Street and accelerated in order to overtake the Byus car.

Cooper pulled next to the Byus car and slowed down in order to stay next to it. The two cars drove next to each other for several minutes. An argument ensued between the occupants of the two vehicles. Byus suggested the occupants of the vehicles get out and fight. Instead both Corrales and De La Cruz stuck guns out the windows of the Cooper vehicle. Byus accelerated when one of the passengers in his car said, "He's got a gun." Likewise, Cooper accelerated and caught up with the Byus car.

Two shots were fired by either De La Cruz or Corrales. One of the bullets struck Byus in the head. After the shots were fired Cooper sped up, raced down 29th Street and turned. Byus died a few days later. There was no plan to shoot Byus.

Byus' mother, administratrix of the estate (administratrix), filed this action against Cooper for negligent driving, Corrales for negligent firing of a gun, and Mid–Century Insurance Company (Mid–Century) for uninsured motorists (UM) insurance. On September 10, 1992, the administratrix filed a motion for partial summary adjudication on the issue of the UM coverage. Mid–Century filed a cross-motion for summary judgment arguing: (1) Byus' death did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle; (2) even if the shooting did arise out of the use of the vehicle, the shooting was an independent act which broke the causal connection; and (3) the person who shot Byus was not the owner or operator of the vehicle. On February 26, 1993, the trial court entered judgment in favor of the administratrix for the stipulated amount of $20,000 on the issue of UM coverage. Mid–Century appealed. The Court of Appeals reversed and remanded the cause, held the injury did not arise out of the use of the Cooper vehicle, and found summary judgment should be rendered in favor of the defendant, Mid–Century. This Court granted certiorari.

## II. Causal relationship between the uninsured vehicle and the insured's death

Section 3636 of title 36 limits UM coverage to damages an insured can recover from the owner or operator and which arise out of the ownership, maintenance or use of a motor vehicle.[2] The insurance contract contains

---

ary 25, 1994, in a supplement of the record. We do not consider these because they could not have been considered by the trial judge in rendering judgment. See In re Estate of Whitlock, 754 P.2d 862 (Okla.1988).

2. Section 3636 provides:
  A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
  B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom....
Okla.Stat. tit. 36, § 3636 (1991).

similar language. Section 3636 and the insurance contract both require a causal connection between the ownership, maintenance or use of the uninsured vehicle, the Cooper car, and the injury, Byus' death. *Safeco Ins. Co. of America v. Sanders,* 803 P.2d 688 (Okla.1990). The trial court concluded as a matter of law a sufficient causal relationship existed to render judgment in favor of the plaintiff. We disagree.

The undisputed facts show 1) the Cooper car was used to chase down the Byus' vehicle, 2) the deadly shot was fired by a passenger in the Cooper car while the car was moving, and 3) the Cooper car was used to escape the scene of the shooting. Even though these material facts are undisputed, reasonable minds could draw different inferences. The use of the gun might be viewed as inextricably linked with the use of the car sufficient to find the requisite causal relationship. If the shooting was seen as separate from the use of the car, a jury could find an insufficient causal relationship. Summary judgment is proper only if there is no dispute of material facts and reasonable minds could not differ. *Handy v. The City of Lawton,* 835 P.2d 870 (Okla.1992). The trial court and the Court of Appeals incorrectly determined summary judgment was proper.

We addressed this same issue in *Willard v. Kelley,* 803 P.2d 1124 (Okla.1990). The facts in *Willard* are similar to the facts in the present case. In both *Willard* and this case, the gun was fired from the car, the cars were involved in a chase immediately before the shooting, and the car was used to get away from the scene of the shooting. The trial court granted summary judgment in favor of the insured. Reasoning that conflicting inferences could be drawn from the stipulated facts, this Court held that summary judgment was not proper. This Court found that the causal connection between the use of the car and the shooting was a question for the jury.

### III. Independent, intervening cause

Even if a jury would find Byus' death arose out of the use of Cooper's car, the shooting would sever liability if were not foreseeable. *Willard,* 803 P.2d at 1128–29,

1131. The parties do not contest that the shooting was accidental in that it was "unexpected, unintended and unforeseen" by Byus. Mid–Century does argue that the shooting was an independent, supervening force severing liability arising out of the use of the Cooper car.

■ An intervening force will sever liability of a defendant only when the force is unforeseeable and, thus, not the proximate cause of the injury. *Willard,* 803 P.2d at 1131. "To rise to the magnitude of a supervening cause, which will insulate the original actor from liability, the new cause must be (1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably foreseeable to the original actor." *Graham v. Keuchel,* 847 P.2d 342, 348 (Okla.1993) (emphasis omitted); *see Willard,* 803 P.2d at 1131–32.

If the force is foreseeable, the causal chain will remain unbroken. *Id.* Thus, if the shooting was unforeseeable from the point of view of the original tortfeasor, it would break any causal chain and be an independent, supervening cause which would sever liability related to the use of the Cooper car, and UM coverage would not apply. On the other side, if the shooting was foreseeable, UM coverage would be available for any injury arising out of the use of the vehicle since any liability for injury resulting from the use of the Cooper car would remain intact.

As we found in *Willard* on similar facts, the issue of the direct causal relationship between the use of the car and the shooting cannot be segregated from the issue of proximate cause. Since the issues are inseparable, we cannot say as a matter of law the shooting would or would not break a causal chain between the use of the Cooper car and Byus' death. Both issues in this case are not proper for summary judgment.

Mid–Century argues the facts in this case are similar to the facts in *Safeco,* 803 P.2d at 688, in which this Court found an intervening, independent force severed liability. In *Safeco,* the insureds were abducted and forced to drive a short distance. The insureds were forced into the trunk, and then

the tortfeasors drove back to the place of the abduction. One of the tortfeasors drove the insureds' car to a remote location while the other drove the tortfeasors' car. The tortfeasors then exited both cars, and cut the fuel line to the insureds' car, ignited the fuel, and left the scene in their car. The insureds died as a result of the ensuing fire. This Court held the acts of cutting the fuel line and igniting the fuel were an independent, intervening force which severed the causal connection between the use of the vehicle and the injury. We find the facts of *Willard* more analogous to the facts in this case than those of *Safeco.*

## IV. Definition of operator of a vehicle

Under section 3636(B) and the language of the contract, UM coverage applies to insureds "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." Mid–Century argues that because the shooter was not the owner or operator of the vehicle, UM coverage does not apply.

In *Safeco,* this Court adopted the definition of operator found in Webster's Third New International Dictionary of the English Language Unabridged as " '1. one that produces a physical effect or engages himself in the mechanical aspect of any process or activity.' " *Safeco,* 803 P.2d at 696. Applying the definition to this case, the shooter was the operator of the vehicle only if he exercised such coercive control over Cooper, the driver, that Cooper did not exercise his own will. In this way, the shooter would have actually controlled the movement of the car and, thus, the operator. The necessary evidentiary material to render summary judgment on this issue is absent.

Even if the shooter was not exercising the necessary control over Cooper, UM coverage may nonetheless apply. It is undisputed that Cooper was the driver of the car. As the driver, Cooper was the operator of the vehicle, under our definition, if he was controlling the movement of the car. If Cooper could have reasonably foreseen, or had reason to believe, that by turning the car around to intercept the Byus car and driving in a manner where the shooter could act to harm

Byus from the vehicle, then Cooper could be found to be legally liable for under the terms of the policy having used the car to facilitate the shooter's action. As with the other issues in this case, the facts are insufficient to determine as a matter of law whether the plaintiff is legally entitled to recover from Cooper.

If a jury were to find the shooting was the proximate cause of Byus' death so as to sever any liability arising out of the use of the vehicle, then the plaintiff would not be legally entitled to recover from Cooper. However, a jury might infer Byus' death arose out of the use of the vehicle and the shooting did not break the causal connection. If so, the jury might also find Cooper legally liable for Byus' death.

## V. Conclusion

The issues in this case are all so intertwined the determination of one impacts the others. None of the issues are determinable as a matter of law. Thus, the trial court erred in rendering judgment for the plaintiff. Likewise, the Court of Appeals erred in finding judgment should have been rendered for the defendant, Mid–Century. The judgment of the trial court is reversed; the Court of Appeals' opinion is vacated; and the cause is remanded.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; JUDGMENT OF THE TRIAL COURT REVERSED; CAUSE REMANDED.

ALMA WILSON, C.J., and LAVENDER, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., and SIMMS and SUMMERS, JJ., dissent.

HARGRAVE, J., Disqualified.

KAUGER, Vice Chief Justice, dissenting, with whom SIMMS, Justice, joins by reason of stare decisis:

The majority finds a factual question exists concerning the causal link between the shooting and the operation of the vehicle. It does so on a record devoid of any evidence that anyone other than the driver controlled the

vehicle when he turned to follow the Byus car.[1] It then concludes that even if the trier of fact determines that the shooting arose from the use of the vehicle, it might still conclude that the shooting was an intervening force severing the vehicle operator's liability. In doing so, it avoids a question of law squarely presented—whether uninsured motorist coverage extends to the acts of a passenger who discharges a firearm from an uninsured motor vehicle.[2] Pursuant to 36 O.S.1991 § 3636[3] and the contractual language[4] of the appellant's, Mid–Century Insurance Company (Mid–Century/insurer), policy, recovery is limited to damages the insured may recover **from the owner or operator** of an uninsured motor vehicle. Because I would find that a passenger not in control of the vehicle, who discharges a firearm from an uninsured automobile, is not an owner or operator of the uninsured motor car

within the meaning of 36 O.S.1991 § 3636 or the policy language at issue, I dissent.

**PURSUANT TO 36 O.S.1991 § 3636 AND THE CONTRACTUAL LANGUAGE OF THE MID–CENTURY POLICY, RECOVERY IS LIMITED TO DAMAGES THE INSURED MAY RECOVER FROM THE OWNER OR OPERATOR OF AN UNINSURED MOTOR VEHICLE. A PASSENGER NOT IN CONTROL OF AN AUTOMOBILE, WHO DISCHARGES A FIREARM FROM AN UNINSURED VEHICLE, IS NOT AN OWNER OR OPERATOR OF THE UNINSURED MOTOR VEHICLE WITHIN THE MEANING OF 36 O.S.1991 § 3636 OR THE POLICY LANGUAGE AT ISSUE.**

Without the aid of any cited authority, the administratrix asserts that uninsured motor-

---

1. In its factual statement, the majority opinion provides that the operator of the vehicle made the U-turn to follow the Byus automobile at the direction of one of the alleged shooters. This conclusion rests upon Mid–Century's failure to contest a statement made by Byus in the motion for summary judgment. Nevertheless, the statement by Byus is unsupported by any evidentiary material (Although the motion for summary judgment refers to an Exhibit "A" for corroboration of this statement, no such exhibit is attached to the motion.). The only reference in the record to a statement about the operation of the vehicle is found in Exhibit "A" to Mid–Century's motion for summary judgment. In response to the question: "Isn't it true that after someone in the other car made a gesture towards your car somebody inside the car said, 'turn around'?" An unidentified female, presumably one of the passengers, responded to the question: "Yes."

The administratrix asserts that Corrales and De La Cruz were in control of the car because they directed Cooper to turn and to pursue the Byus vehicle. However, under these facts, the argument is unpersuasive. See, *Pfeiffer v. Weiland*, note 9, infra (Where boat owner's brother, at time of water skiing accident, was in water behind boat preparing to ski and was communicating with occupants of boat, which the owner usually operated according to directions he received from the skier either directly or through other passengers, the brother was not an "operator" whose negligent conduct could by statute be charged to owner.). The record contains nothing to support a finding that the driver's decision to pursue the Byus vehicle was controlled by the passengers.

2. Not presented is the question of whether a passenger might exercise an extent of control

over the driver so as to step into his/her shoes as controlling the operation of the vehicle.

3. Title 36 O.S.1991 § 3636 provides in pertinent part:

"A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom...."

Section 3636 was amended effective September 1, 1994. However, the quoted language remains unchanged.

4. The contractual language provides in pertinent part:

"... PART II—UNINSURED MOTORIST
Coverage C—Uninsured Motorist Coverage. We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle...."

ist coverage exists because Cooper was convicted of the murder of her son.[5] Alternately, she argues that Corrales and De La Cruz were operators of the uninsured motor vehicle within the meaning of 36 O.S.1991 § 3636.[6] Mid–Century insists that because Byus was not shot by an operator of the uninsured motor vehicle there is no coverage. I agree.

Both parties find support in this Court's pronouncement in *Safeco Ins. Co. of America v. Sanders*, 803 P.2d 688, 693 (Okla.1990). In *Safeco*, two men abducted a couple and forced them into the trunk of an uninsured car. The couple was driven to a remote area where the abductors parked the car, cut the fuel line and set the car on fire. The couple died from burns and smoke inhalation. Personal representatives of the victims filed claims with *Safeco* to collect uninsured motorist benefits. The insurer filed a declaratory judgment action in federal court to determine coverage. This Court answered four questions in *Safeco* holding that: 1) the murder of the couple arose out of the use of the motor vehicle, as contemplated by the uninsured motorist statute; 2) there was a causal connection between the use of the vehicle and the murders; 3) the kidnappers' setting the car on fire after it was parked was an act of independent significance severing the causal link between the transportation use of the car and the injury; and 4) although both the abductors had driven the car at some point during the incident, they were not "operators" of the car when the fire was set.

In *Safeco*, the Court acknowledged that the term "operator" was not defined in the uninsured motorist statute. In assigning a definition to the term, we relied upon the common interpretation of the word.[7] The pertinent language in *Safeco* provides:

"As stated previously, § 3636 does not define 'operator of an uninsured motor vehicle' or otherwise provide guidance for its interpretation. It is a common word and

should be read in its ordinary sense. Webster's Third New International Dictionary of the English Language Unabridged, 1963, at page 1581, defines operator as '1. one that produces a physical effect or engages himself in the mechanical aspect of any process or activity'. Accordingly, we hold that 'operator,' as contemplated by § 3636, includes any person who is engaged in activity related to the transportation nature of the vehicle." (Footnotes omitted.)

**Although it is undisputed that neither Corrales nor De La Cruz drove the Cooper car on the evening of the shooting—and that there is no evidence presented that anyone other than the driver controlled the vehicle when he turned to follow Byus,** the administratrix argues that they were operators within the meaning of 36 O.S.1991 § 3636 as defined in *Safeco*. Her argument is grounded on the premise that passengers, while riding in a vehicle, are engaged in the transportation nature of the automobile. Mid–Century insists that under *Safeco* one must produce a physical effect or engage in some mechanical aspect of the operation of a vehicle before the person becomes an "operator" within the meaning of § 3636.

Reading the last sentence quoted from *Safeco* in isolation, one might be inclined to agree with the administratrix that a passenger is an operator within the meaning of the uninsured motorist vehicle statute. However, this Court also relied upon a common definition of operator in *Safeco* which specifically refers to an operator as one who "produces a physical effect" or "engages ... in the mechanical aspect of any process or activity." We recognized in *Safeco* that the definition of operator found in 47 O.S.1991 § 1–140 of the Highway Safety Code (Safety Code) was tailored for drivers' licensing. Nevertheless, a definition of "operator" within the meaning of § 3636 requiring a more active involvement in the operation of the vehicle than a passenger affords is consistent

---

**5.** Assignments of error not argued or supported in the brief with citation of authority are treated as waived. *Peters v. Golden Oil Co.*, 600 P.2d 330–31 (Okla.1979).

**6.** Title 36 O.S.1991 § 3636, see note 3, supra.

**7.** Title 25 O.S.1991 § 1 provides:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained."

with the statutory definition found in § 1–140. The Safety Code defines an operator as:

> "Every person, other than a commercial chauffeur or chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle."

Although not enacted for the purpose of construing insurance contracts, one court has found that motor vehicle codes are at least instructive in determining the definition of "operator" in the insurance context.[8] In *Schaffer v. Mill Owners Mut. Ins. Co.*, 242 Or. 150, 407 P.2d 614–15 (1965), the Oregon court found that the word "operator" within the liability portion of an automobile insurance policy was synonymous with the word driver. Similarly, other courts, as we did in *Safeco*, have generally found that "operate" within the insurance context means to regulate and control the actual operation of a vehicle.[9]

On the evening of the shooting, neither of the passengers here were ever in a position to be in the actual physical control of the Cooper vehicle. They did not take actions which produced either a physical effect on the vehicle or which related to its mechanical operation. They were not "operators" within the meaning of the term as defined in *Safeco*—and there is no evidence presented that anyone other than the driver controlled the vehicle when he turned to follow Byus. Under these facts, a passenger, who discharges a firearm from an uninsured vehicle, is not an owner or operator of the uninsured motor vehicle within the meaning of 36 O.S.1991 § 3636 or the policy language at issue.

## CONCLUSION

Although my sympathies lie with the Byus parents over the loss of their son, the protection afforded by the coverage under consideration here clearly is both legislatively[10] and contractually[11] confined to damages the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle.[12] The purpose of this coverage is to provide insured persons who are legally entitled to recover damages from owners or operators of an uninsured or under-insured vehicle with a means of recovery.[13] The clear, plain mandate of 36 O.S.1991 § 3636 is that insureds shall be protected from injury caused by wrongdoing owners or operators of uninsured vehicles.[14] Both Corrales and De La Cruz were undisputedly passengers in the Cooper car. They did not exercise control over the operation of the vehicle. Because, under the facts presented, they were not

---

**8.** *Schaffer v. Mill Owners Mut. Ins. Co.*, 242 Or. 150, 407 P.2d 614–15 (1965); *Kuzinski v. Boretti*, 182 Mich.App. 177, 451 N.W.2d 859, 861 (1989) (Determining the meaning of "operation" of an ambulance in the context of the Governmental Tort Claims Act.).

**9.** *Orth v. Universal Underwriters Ins. Co.*, 284 F.2d 857 (9th Cir.1960); *Pfeiffer v. Weiland*, 226 N.W.2d 218, 224 (Iowa 1975); *Heritage Ins. Co. v. Phelan*, 59 Ill.2d 389, 321 N.E.2d 257, 262 (1974); *Cochran v. M & M Transp. Co.*, 112 F.2d 241, 243–44 (1940); *Schaffer v. Mill Owners Mut. Ins. Co.*, see note 8, supra; *Reetz v. Mansfield*, 119 Conn. 563, 178 A. 53, 56 (1935); *Kuzinski v. Boretti*, see note 8, supra; *Bats, Inc. v. Shikuma*, 1 Haw.App. 231, 617 P.2d 575 (1980); *Zurich–American Ins. Co. v. Liberty Mut. Ins. Co.*, 85 Cal.App.3d 481, 149 Cal.Rptr. 472, 476 (1978); Annot., "Automobile Liability Insurance: Operator's Policy," 88 A.L.R.2d 995, 1011 (1963) (An operator's policy normally affords the insured no coverage where he/she is neither actually nor constructively driving the vehicle at the time of the accident.); J. Appleman, *Insurance Law & Practice*, § 4314 (1979) provides in pertinent part:

> "The term 'operation' is included within the insuring expression of many older forms of policies, and runs throughout the arterial structure of automobile insurance law. The better definition of the expression is that it involves personal physical management of the automobile by the person in question...."

See also, *State v. Dellinger*, 73 N.C.App. 685, 327 S.E.2d 609, 611 (1985). But see, *Neel v. Indemnity Ins. Co. of North America*, 122 N.J.L. 560, 6 A.2d 722, aff'd, 124 N.J.L. 130, 11 A.2d 106 (1939).

**10.** Title 36 O.S.1991 § 3636, see note 3, supra.

**11.** See contract language, note 4, supra.

**12.** *Safeco Ins. Co. of America v. Sanders*, 803 P.2d 688, 690–91 (Okla.1990).

**13.** *Welch v. Armer*, 776 P.2d 847, 849 (Okla. 1989).

**14.** Title 36 O.S.1991 § 3636. see note 3, supra; *Safeco Ins. Co. of America v. Sanders*, see note 12 at 694, supra.

owners or operators within the meaning of the uninsured motorist statute or the policy language at issue,[15] the administratrix should not recover uninsured benefits from the insurer.

SUMMERS, Justice, dissenting, with whom SIMMS, Justice, joins.

I do not believe this automobile policy insuring against injuries inflicted by an uninsured motorist contemplated additional coverage for gunshot injuries. I dissent for the reasons explained in *Willard v. Kelley*, 803 P.2d 1124, 1135 (Okla.1990), (Summers, J., concurring in part and dissenting in part).

---

15. Title 36 O.S.1991 § 3636, see note 3, supra; see the contractual language, note 4, supra.