**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 5/13/96

**TENTH CIRCUIT**

LINDA FERN WALKER, Surviving
Spouse of Barry Allen Walker, Deceased,

        Plaintiff - Appellant,

    v.

FARMERS INSURANCE COMPANY,
INC.,

        Defendant - Appellee.

No. 95-5120

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D. Ct. No. 93-C-897 K)**

Kathryn Hope Burgy, Frasier, Frasier & Hickman, Tulsa, Oklahoma (Everett R. Bennett, Jr., on the brief) appearing for the Plaintiff-Appellant.

Ray H. Wilburn and Scott R. Taylor, Wilburn, Masterson & Smiling, Tulsa, Oklahoma, appearing for the Defendant-Appellee.

Before TACHA, BRORBY, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff Linda Walker made claims under two auto insurance policies with defendant

Farmers Insurance Company ("Farmers") as a result of a shooting incident that caused the death of her husband Barry Walker. When Farmers denied payment, Linda Walker filed suit in Oklahoma state court. Farmers removed the case to the United States District Court for the Northern District of Oklahoma. The district court granted summary judgment in favor of Farmers on all claims, and Walker appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## Background

Barry Walker and Wayne Enloe were neighbors. Over a period of time, animosity developed between the two men regarding a property dispute. On September 4, 1988, Walker drove his daughter to church in his van. After he stopped the van in front of the church, it was hit broadside by a pickup truck driven by Wayne Enloe's son, Perry. Wayne Enloe, whom Perry was following at the time of the accident, backed up his oilfield truck, exited the truck, and ran over to the driver's side of his son's pickup. Wayne Enloe then produced a gun and fired a shot into Walker's van. The shot missed Walker, who exited the passenger side of his van and began running down the street. Wayne Enloe chased him, firing several rounds from the gun. Eventually, one round struck Walker in the back and he fell to the ground on his hands and knees. Wayne Enloe then walked to within ten feet of Walker and fired a final shot into Walker's head.

Wayne Enloe was charged with first degree murder. At his criminal trial, Enloe

testified that Walker had attempted to run him off the road on the morning of the shooting. Enloe said that he believed that Walker's van had hit Perry Enloe's pickup, not the other way around. Enloe further testified that, after the accident, he saw Walker come around the front of the pickup and then return to his van. Enloe said that he thought Walker was returning to his van to get a gun. Finally, Enloe testified that he shot Walker "because he caused the wreck." The jury found Enloe not guilty by reason of insanity.

Wayne Enloe owned both the pickup and the oilfield truck. At the time of the accident, neither he nor his son had automobile insurance. Barry Walker and plaintiff Linda Walker held two automobile insurance policies issued by Farmers. One policy provided uninsured motorist coverage of $25,000 per person and medical expense coverage of $5000; the other policy provided uninsured motorist coverage of $10,000 per person and medical expense coverage of $5000. Linda Walker demanded that Farmers pay on the uninsured motorist and medical expense coverage provisions, and Farmers denied payment. Walker then brought an action for breach of contract and bad faith.

The district court granted summary judgment to Farmers on all claims. On the uninsured motorist claim, the court held that Wayne Enloe's act was unrelated to the transportation nature of his vehicle and, in any case, constituted a supervening force that severed any causal connection between the use of his vehicle and Barry Walker's death. On the medical expense claim, the court held that Walker was not "occupying" his vehicle at the time of his injury and was thus ineligible to receive payment under the medical expense

coverage provisions.

## Discussion

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56 (c). Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). We begin with the uninsured motorist claim. The relevant insurance policies provided uninsured motorist coverage in accordance with 36 O.S.A. § 3636 as follows:

> We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person**. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

(Emphasis in original.) The Oklahoma Supreme Court has developed a four-part test for determining whether uninsured motorist coverage applies to a particular injury:

1. Does the injury arise out of the use of the motor vehicle as contemplated by 36 O.S.A. § 3636?

2. If the injury arose out of the use of the motor vehicle, was there a causal connection between the use of the vehicle and the injury?

   a. Is the use of the vehicle connected to the injury, and

   b. Is that use related to the transportation nature of the vehicle?

3. If the causal connection existed, did an intervening force sever the causal connection?

4. Was the uninsured an owner or operator of the vehicle during the commission

- 4 -

of the wrongful act?

See Safeco Ins. Co. of Am. v. Sanders, 803 P.2d 688 (Okla. 1990); Byus v. Mid-Century Ins. Co., 912 P.2d 845, 846-48 (Okla. 1996).

Both Perry Enloe and Wayne Enloe were uninsured. Perry Enloe was involved in the accident that triggered the series of events leading to Walker's death. Wayne Enloe used his truck to reach the scene of the accident. We must, therefore, separately analyze the connections of both uninsureds to Walker's death under Safeco's four-part test.[1]

As to the first part of the Safeco test, the Supreme Court of Oklahoma held that "if the facts establish that a motor vehicle or any part of the motor vehicle is the dangerous instrument which starts the chain of events leading to the injury, the injury arises out of the use of the motor vehicle . . . ." Safeco, 803 P.2d at 692. Under this extremely broad test, we can say that both Perry Enloe's involvement in the accident and Wayne Enloe's use of his vehicle to reach the scene of the accident could have started the chain of events that led to Walker's death. Thus the first part of the test is satisfied with respect to both Perry and Wayne Enloe for the purposes of summary judgment.

The second part requires "a connection between the motoring or transportation use (use related to the inherent nature of a motor vehicle) by an uninsured motorist and the injury to the insured." Id. There are two distinct components of this determination: (1) the use of

---

[1]We note that appellant Linda Walker does not argue that she is entitled to uninsured motorist payments as a result of Wayne Enloe's status as the owner of the pickup driven by Perry Enloe. Accordingly, we do not decide this issue on appeal.

the vehicle must be connected to the injury and (2) that use must be related to the transportation nature of the vehicle. Id. In the case of Perry Enloe, we find that there was a sufficient connection between the transportation use of the vehicle and Walker's death to avoid summary judgment. Perry Enloe was driving his vehicle when he caused the accident. The accident, according to Wayne Enloe, was the reason that he shot Walker. Thus we cannot say, as a matter of law, that there was no connection between the transportation use of Perry Enloe's vehicle and Walker's death.

We do not find, however, that Wayne Enloe's vehicle was sufficiently connected to Walker's death to satisfy the second part of the uninsured motorist test. Wayne Enloe merely used his vehicle to reach the scene of the accident. Driving a vehicle to the scene of an accident or a crime does not establish a sufficient connection between the transportation use of that vehicle and any subsequent injury caused by its driver. Thus there was no connection between the transportation use of Wayne Enloe's vehicle and Walker's death, and we need not address parts three and four with respect to that vehicle.

The Oklahoma Supreme Court recently clarified the third part of the Safeco test, whether an intervening force severs the causal connection, in Byus, 912 P.2d at 847-48. Byus involved an uninsured motorist coverage claim that arose out of a shooting death. The court stated that "[t]o rise to the magnitude of a supervening cause, which will insulate the original actor from liability, the new cause must be (1) independent of the original act, (2) adequate of itself to bring about the result and (3) one whose occurrence was not reasonably

foreseeable to the original actor." 912 P.2d at 847 (quoting Graham v. Keuchel, 847 P.2d 342, 348 (Okla. 1993) (emphasis omitted)). Although it appears that the three elements of this inquiry operate in conjunction, the court made clear that the real test is foreseeability. "[I]f the shooting was unforeseeable from the point of view of the original tortfeasor, it would break any causal chain and be an independent, supervening cause which would sever liability related to the use of the [uninsured's] car, and [uninsured motorist] coverage would not apply." Id.; see also Willard v. Kelley, 803 P.2d 1124, 1131 (Okla. 1990).[2]

We hold that the shooting in this case was not foreseeable from Perry Enloe's point of view. Although Perry Enloe was aware of his father's ongoing feud with Walker, there was nothing in the history of that dispute to suggest to him that the feud would escalate to the use of firearms. Moreover, there is no evidence that the accident was part of a coordinated plan by Wayne and Perry Enloe to kill Walker. Because the shooting was not foreseeable, we find that the act of Wayne Enloe constituted an intervening force that severed the causal connection between Perry Enloe's accident and Walker's death. Thus, it is not

---

[2]The Oklahoma Supreme Court has offered a number of inconsistent tests for considering whether the actions causing the insured's injury sever the causal link between the use of the uninsured motor vehicle and the resulting harm. In Safeco, the court applied an objective test that examined whether the actions that caused the injury were "related to the transporation nature of the motor vehicle." See 803 P.2d at 694-95. In Willard and Byus, the court applied subjective tests, though the tests used in each case probed the minds of different individuals. Compare Willard, 803 P.2d at 1131-32 (considering whether the harm was foreseeable to the insured) with Byus, 912 P.2d at 847-48 (considering whether the harm was foreseeable to the original tortfeasor). We choose to apply the Byus test because we consider the facts in Byus to be the most analogous to our case. At the same time, we are confident that the result would be the same under Safeco and Willard.

necessary to reach the fourth part of the uninsured motorist test with regard to Perry Enloe's vehicle.

In both Byus and Willard, the Oklahoma Supreme Court found the question of intervening cause to be a jury question because it was inextricably tied to the question of whether a causal connection existed in the first place. In both of those cases, however, the uninsured motorists in question were more directly involved in the shooting. In this case, neither Perry Enloe's involvement in the accident nor Wayne Enloe's use of his truck to reach the scene of the accident were sufficiently related to Walker's death to pass the Safeco test. Thus, Linda Walker is not entitled to uninsured motorist coverage under the relevant insurance policies.

The question remains whether Linda Walker should receive payments under the medical expense coverage provisions. The policies provide medical expense coverage as follows:

> We will pay reasonable expenses incurred within three years of the date of **accident** for necessary **medical services** and funeral expenses because of **bodily injury** sustained by an **insured person**.

> As used in this part, **insured person** or **insured persons** means . . . [y]ou or any **family member** while **occupying**, or through being struck by, a motor vehicle or trailer, designed for use on public roads.

(Emphasis in original.) The issue here is whether, at the time of injury, Barry Walker was "occupying" his vehicle within the meaning of his policies' medical expense coverage provisions.

The Oklahoma Supreme Court has defined "occupying" in the context of medical

expense coverage to include both "alighting from" and "entering into" a vehicle. <u>Willard</u>, 803 P.2d at 1132. Linda Walker claims that Barry Walker was alighting from his van when Enloe shot him. The uncontroverted facts, however, demonstrate that Barry Walker was neither alighting from, entering into, or even close to his vehicle when he was first hit by a bullet. Instead, he was running down the street a considerable distance from his vehicle. Because Barry Walker was not occupying his vehicle when injured, Linda Walker cannot recover on her medical expense coverage claim.

## Conclusion

Linda Walker cannot recover on her uninsured motorist claim because neither the vehicle driven by Wayne Enloe nor the vehicle driven by Perry Enloe was sufficiently connected to the death of her husband. Walker cannot recover on her medical expense coverage because her husband was not occupying his vehicle at the time his injuries occurred. Accordingly, the judgment of the district court is AFFIRMED.