**Bertha P. NICHOLS and Richard L. Nichols, et ux, and Dale Kilgore, as Father and Next Friend of Chad Kilgore, a Minor, Plaintiffs,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, a Foreign Corporation, Defendant.**

No. CIV–96–63–C.

United States District Court,
W.D. Oklahoma.

Dec. 13, 1996.

Mark T. Koss, McNaulty, Koss & Bumgardner, Oklahoma City, OK, for plaintiffs.

Ronald L. Walker, A. Michelle Campney, McKinney, Stringer & Webster, Oklahoma City, OK, for defendant.

### ORDER

CAUTHRON, District Judge.

This matter comes before the Court on cross-motions for summary judgment from defendant, Nationwide Mutual Insurance Company (Nationwide), and plaintiffs, Bertha and Richard Nichols and Chad Kilgore. Plaintiffs' motion requests that this Court grant partial summary judgment on their behalf on the issues of whether uninsured motorist coverage provided by defendant covers their alleged loss, and whether the doctrine of *res ipsa loquitur* applies to their claim. Defendant Nationwide also seeks a ruling from this Court granting summary judgment on its behalf on the issue of whether uninsured motorist coverage is applicable to the current situation, as well as whether defendant's denial of plaintiff's insurance claim was in bad faith. Because the Court finds that the uninsured motorist policy did not cover the plaintiffs' claim, plaintiffs' motion for summary judgment is denied and defendant's motion is granted.

### I. *Background—Undisputed Facts*

For the purposes of these motions, the parties have stipulated to certain facts that they believe will allow the Court to grant or deny summary judgment regarding whether the uninsured motorist provision covers plaintiff's damages. They are as follows.

1. On April 19, 1995, Richard and Bertha Nichols and Chad Kilgore (collectively referred to as "plaintiffs") were in or near the Nichols' vehicle, a 1990 Ford Fiesta, which was parked outside the Regency Tower apartments in Oklahoma City.

2. On that same day at approximately the same time, a certain individual or individuals parked a Ryder rental truck outside of the Alfred P. Murrah Federal Building. The truck was used to move a bomb, which was thereafter detonated.

3. As a result of the explosion, the axle of the truck in which the bomb was contained landed on or near the hood of the Nichols' vehicle which was parked approximately one and one-half blocks northwest of the Murrah Building.

4. The plaintiffs did not own the Ryder truck or know the individual or individuals responsible for parking the truck in front of the Murrah Building or detonating the bomb therein.

5. For purposes of summary judgment only, the parties assume and stipulate that the truck itself had no auto liability insurance in force at the time of the explosion, and that the plaintiffs were injured.

### II. *Discussion*

Summary judgment is proper if the facts on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1118 (10th Cir. 1991). Where the parties have stipulated to the material facts involved with a specific legal claim and both parties have moved for summary judgment on that claim, it is appropriate for the Court to decide that issue as a matter of law. *See Wagner & Brown v. Ward Petroleum Corp.*, 876 F.Supp. 255 (W.D.Okla.1994).

In *Safeco Ins. Co. of Am. v. Sanders*, 803 P.2d 688 (Okla.1990), the Supreme Court of Oklahoma identified a four-part test to determine whether uninsured motorist coverage applies to a particular injury:

1. Does the injury arise out of the use of the motor vehicle as contemplated by 36 O.S.A. § 3636?

2. If the injury arose out of the use of the motor vehicle, was there a causal connection between the use of the vehicle and the injury?

   a. Is the use of the vehicle connected to the injury, and

   b. Is the use related to the transportation nature of the vehicle?

3. If the causal connection existed, did an intervening force sever the causal connection?

4. Was the uninsured an owner or operator of the vehicle during the commission of the wrongful act?

*Walker v. Farmers Ins. Co., Inc.,* 83 F.3d 349, 351 (10th Cir.1996) (citing *Safeco; Byus v. Mid–Century Ins. Co.,* 912 P.2d 845, 846–48 (Okla.1996)).

### A. Does the injury arise out of the use of the motor vehicle?

■ The Supreme Court of Oklahoma has given this first element a very broad definition. The court stated:

if the facts establish that a motor vehicle or any part of the motor vehicle is the dangerous instrument which starts the chain of events leading to the injury, the injury arises out of the use of the motor vehicle, as contemplated by 36 O.S.1981, § 3636.

*Safeco,* 803 P.2d at 692.

In *Safeco,* the Court held that the use of the car to transport, imprison and ultimately burn to death the victims was sufficient to establish this element. 803 P.2d at 690–92. Likewise, the Tenth Circuit in *Walker* ruled that the mere use of the vehicle to transport the assailant to the scene of the crime could be sufficient to "start the chain of events." Therefore, in the present case, the evidence that a part of the truck itself was the projectile which inflicted the injury and that the explosives which caused the climax of the criminal act were taken to the scene and concealed in the truck is sufficient so that a jury could find that this very broadly defined element has been established.

### B. Was there a causal connection between the use of the vehicle and the injury?

■ The second element identified by the Court in *Safeco* mandates there be " 'a connection between the motoring or transportation use (use related to the inherent nature of a motor vehicle) by an uninsured motorist and the injury to the insured.' " *Walker,* 83 F.3d at 352 (quoting *Safeco,* 803 P.2d at 692). This element is measured by reference to a two-part test: "1) is a use of the vehicle connected to the injury; and 2) is that use related to the transportation nature of the vehicle."

As the decision of the Supreme Court of Oklahoma does not identify or define what is intended by a "transportation use" or "transportation nature," the Court will turn to the factual background and the decision of the Court of Appeals in *Walker* for guidance. *Safeco,* 803 P.2d at 692. In *Walker,* the Tenth Circuit held that the injury was not causally connected to the transportation use of the vehicle where the assailant left his vehicle, walked away from his vehicle, then fired at and killed the victim. The Court of Appeals held "[d]riving a vehicle to the scene of an accident or a crime does not establish a sufficient connection between the transportation use of that vehicle and any subsequent injury caused by its driver." 83 F.3d at 352. In the present case, once the Ryder truck was parked, it was no longer being used as a vehicle for transportation, but for the packaging and concealment of explosives, a use decidedly not connected to transportation. The actions or events that caused the injuries were, as in *Walker,* carried out after the assailant or assailants had stopped using the vehicle for its transportation purposes.[1] Therefore, based on the undisputed facts submitted by the parties, the Court finds that plaintiff cannot as a matter of law establish that the use causing the injury was related to the transportation nature of the vehicle.

### C. If the causal connection existed, did an intervening force sever the causal connection?

■ Although this Court has ruled that no causal connection between plaintiffs' injuries

---

1. The Supreme Court of Oklahoma in *Byus v. Mid–Century Ins. Co.,* 912 P.2d 845 (Okla.1996) and *Willard v. Kelley,* 803 P.2d 1124 (Okla.1990) allowed cases to go to the jury where the uninsured assailants fired weapons from vehicles at the victims. In these cases, the distinction exists that the vehicles were still being used in their transportation capacity during the commission of the tortious or criminal act, blending the transportation and offending use of the vehicle.

and the transportation nature of the vehicle exists, it will also address the third element to determine if an intervening force might have severed · any · causal connection that might have existed. The exact formulation of the third element of the test is in doubt due to conflicting opinions of the Supreme Court of Oklahoma. In a lengthy, but revealing footnote, the Tenth Circuit in *Walker* stated:

> The Oklahoma Supreme Court has offered a number of inconsistent tests for considering whether the actions causing the insured's injury sever the causal link between the use of the uninsured motor vehicle and the resulting harm. In *Safeco*, the court applied an objective test that examined whether the actions that caused the injury were 'related to the transportation nature of the motor vehicle.' In *Willard* and *Byus*, the court applied subjective tests, though the tests used in each case probed the minds of different individuals. Compare *Willard*, 803 P.2d at 1131–32 (considering whether the harm was foreseeable to the insured) with *Byus*, 912 P.2d at 847–48 (considering whether the harm was foreseeable to the original tortfeasor). We choose to apply the *Byus* test because we consider the facts ... to be the most analogous to our case.

*Walker*, 83 F.3d at 352 n. 2.[2] If this Court were to follow the foreseeability test as identified by the state Supreme Court in *Byus*, the action would be foreseeable to the person or persons who detonated the explosives, and thus would not be an intervening force sufficient to sever causation. 912 P.2d at 847–48. Nevertheless, the Court does not read the decision in *Byus* as overruling the previous decisions of the Oklahoma Supreme Court, nor does the Court consider the Tenth Circuit's opinion in *Walker* as identifying the test in *Byus* as the appropriate test to follow in all instances. *See Walker*, 83 F.3d at 352–53. Instead, in *Walker*, the Court of Appeals chose to apply the test from the Oklahoma

case with the facts most analogous to the facts before it. *Id.*

As the Tenth Circuit chose to follow the formulation of the Oklahoma case with the most analogous facts, this Court will follow the Supreme Court of Oklahoma's decision in *Safeco* which involves facts most closely resembling the present case. *See Walker*, 83 F.3d at 352 n. 2. *Safeco* involved the use of the vehicle itself as the instrumentality used by the assailants to kill the victims. The victims were killed when the assailants placed the victims in the trunk of the car, cut the fuel line to the car, and ignited the fuel after the car was parked. It is analogous to the present case as the individual or individuals who bombed the Murrah Building used the Ryder truck, in part, as a part of the weapon once the vehicle was parked, and, like *Safeco*, the injury inflicted was caused by the vehicle itself.

Applying the ruling of the Supreme Court of Oklahoma in *Safeco* to the present situation, the Court finds that if any causal connection between the transportation use of the Ryder truck and the injuries did exist, that connection is severed by the acts of the individual or individuals igniting the explosives. In *Safeco*, the court ruled that "acts of an uninsured motorist which are not related to the transportation nature of a motor vehicle and which result in injury to the insured constitute acts of independent significance to sever the causal connection between the use of a motor vehicle and the injury." 803 P.2d at 694. This Court has already ruled that the injuries to plaintiffs were caused by acts having nothing to do with the transportation nature of the vehicle. The transportation use of the vehicle in the present case is entirely peripheral to the vehicle's use as a part of an explosive device which caused the injuries to plaintiffs. This result comports with the ruling of the Supreme Court of Oklahoma as it concluded:

> [T]he acts of cutting the fuel line and igniting the fuel after the car was parked, which caused the car to burn, are so contrary to [the] transportation nature of the

---

2. This Court has considered, *sua sponte*, whether certification of this question to the Supreme Court of Oklahoma is necessary in the present case, but has concluded that because the use causing the injury is not a transportation use, there is no need to request the state court to resolve the issue at this time. *See* 20 Okla.Stat. § 1602 (1991).

vehicle that, as a matter of law, these events are not related to its transportation nature and injury resulting therefrom is not within the UM coverage mandated by § 3636. *Id.* at 695. Therefore, detonating the explosives is an act of independent significance severing any causal link that may have existed between plaintiffs' injuries and the transportation use of the vehicle.

### D. Was the uninsured an owner or operator of the vehicle during the commission of the wrongful act?

■ The fourth element of the test, as defined by the Supreme Court of Oklahoma, is whether the individual(s) who perpetrated the Murrah Building bombing was (were) an "operator(s)" of the vehicle. In determining who is an operator, the court in *Safeco* identified an operator as a person "engaged in activity related to the transportation nature of the vehicle." 803 P.2d at 695. As the Court ruled above, at the time of the wrongful act the individuals who detonated the explosives were not engaged in an activity related to the transportation nature of the vehicle. Therefore, plaintiffs' injuries were not the result of the actions of an operator of the vehicle during the commission of the wrongful act.[3]

### E. Plaintiffs' bad faith claims.

■ In addition to plaintiffs' claims for compensation through the uninsured motorist policy, plaintiffs' complaint also includes claims of bad faith against Nationwide for its refusal to honor the policy. Plaintiffs assert their bad faith claim based upon two grounds: 1) Nationwide's citation to a "terrorist exclusion clause" that was not in the contract, and 2) Nationwide's knowingly incorrect conclusion that the uninsured motorist provision does not cover plaintiffs' losses. To establish a claim of bad faith against an insurer in Oklahoma, the plaintiffs must show that the insurer's refusal to pay a claim was unreasonable and unjustified. *Willis v. Midland Risk Ins. Co.,* 42 F.3d 607 (10th Cir.

1994); *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1977); *London v. Trinity Companies,* 877 P.2d 620 (Okla.Ct. App.1994). However, plaintiffs may not prevail on their bad faith claim if there is a legitimate dispute between the insured and insurer as to issues of fact or law. *See Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 762 (Okla.1984). Because this Court has found that plaintiffs' uninsured motorist policy did not cover the damages to their vehicle, the Court finds that defendant's refusal to pay on that policy was not in bad faith. The Court has also noted that the authoritative decisions on uninsured motorist coverage contain conflicting standards. Therefore, as much of this dispute arises out of the uncertainty in the law, the Court also finds that it was not unreasonable for defendant to dispute the claims. *See Walker,* 83 F.3d at 352 n. 2.

The facts are in dispute regarding plaintiffs' allegation that Nationwide unreasonably and in bad faith cited a fictitious terrorist exclusion clause as an additional basis for denying coverage on the vehicle. However, plaintiffs' raise this issue with respect to the same losses for which they raise the uninsured motorist policy. Therefore, as the Court has ruled that those losses were properly disputed by Nationwide, plaintiffs' bad faith claim also fails under the fictitious terrorist clause argument.

### III. *Conclusion*

The undisputed facts are legally insufficient to establish a claim under plaintiffs' uninsured motorist policy or for bad faith on the part of defendant. Although the stipulated facts were sufficient to establish that plaintiffs' injuries arose out of the use of the motor vehicle, that use was not related to the transportation nature of the vehicle. Even if the Court were to assume that plaintiffs' injuries were caused by a transportation use of the vehicle, such causal connection was severed by the intervening wrongful act of detonating the explosives, and the perpetrator or perpetrators of that act cannot be

---

**3.** As the Court has ruled that plaintiffs' losses were not compensable under the uninsured motorist policy, the Court finds it unnecessary to address plaintiffs' contentions that *res ipsa loquitur* applies in the present factual scenario.

considered as operating the uninsured vehicle under the statute. Finally, because the defendant has prevailed on its interpretation of the uninsured motorist clause, and conflicting authority exists in this area of the law, plaintiffs' claims for bad faith must also fail as the defendant legitimately disputed the claim. The foregoing considered, plaintiffs' motion for partial summary judgment is denied and defendant's motion for summary judgment is granted. A judgment shall issue accordingly.

IT IS SO ORDERED.